IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PHILLIP B. KRIEGE,<br><br>            Plaintiff,<br><br>    vs.<br><br>HAWAII THIRD CIRCUIT COURT<br>JUDGE GLEN S. HARA, et al.,<br><br>           Defendants.<br>_____ | CIVIL NO. 11-00757 JMS/BMK<br><br>ORDER (1) GRANTING<br>DEFENDANTS JEFFERY N.<br>BURLESON AND HAWAII<br>COUNTY POLICE DEPARTMENT'S<br>MOTION TO DISMISS;<br>(2) GRANTING DEFENDANTS<br>JUDGE JOSEPH P. FLORENDO,<br>JUDGE GLEN S. HARA, AND<br>ELAINE NAHAKUELUA'S<br>MOTION TO DISMISS; (3) SUA<br>SPONTE DISMISSING CLAIMS AS<br>TO OTHER DEFENDANTS; AND<br>(4) GRANTING LEAVE TO AMEND |

**ORDER (1) GRANTING DEFENDANTS JEFFERY N. BURLESON AND HAWAII COUNTY POLICE DEPARTMENT'S MOTION TO DISMISS; (2) GRANTING DEFENDANTS JUDGE JOSEPH P. FLORENDO, JUDGE GLEN S. HARA, AND ELAINE NAHAKUELUA'S MOTION TO DISMISS; (3) SUA SPONTE DISMISSING CLAIMS AS TO OTHER DEFENDANTS; AND (4) GRANTING LEAVE TO AMEND**

## I. INTRODUCTION

On November 16, 2011, *pro se* Plaintiff Phillip B. Kriege ("Plaintiff")

filed a Complaint in the United States District Court for the Southern District of

California asserting civil rights claims against Hawaii State Third Circuit Court

Judges Glen S. Hara ("Judge Hara") and Joseph P. Florendo ("Judge Florendo");

Prosecuting Attorney Charlene Y. Iboshi ("Iboshi"); Deputy Prosecuting Attorneys

Jeffery N. Burleson ("Burleson") and Roland J. Talon ("Talon"); "Bailiff of the Kealakekua Court" ("Bailiff"); "Clerk of the Kealakekua Circuit Court," Elaine Nahakuelua ("Clerk Nahakuelua"); and the Hawaii County Police Department ("HCPD").[1]  Although not entirely clear from the Complaint, Plaintiff appears to assert that Defendants violated his constitutional rights when he was held in contempt of court and arrested on several occasions.  On December 9, 2011, the Southern District of California transferred the action to this court.

Currently before the court are two Motions to Dismiss filed by: (1) Judge Florendo, Judge Hara, Clerk Nahakuelua, and Bailiff ("Court Defendants"); and (2) the HCPD and Burleson ("County Defendants").  Court Defendants argue that this court lacks jurisdiction over the claims against them, and both the Court Defendants and the County Defendants argue, among other things,[2] that the Complaint fails to state a claim upon which relief can be granted. Although not entirely clear, Plaintiff's Opposition appears to assert that his Complaint should be construed as a Petition for Habeas Relief.  Based on the following, the court GRANTS the Motions to Dismiss -- regardless of how the

---

[1]  The HCPD is identified as "Ka'u Police Department" in the Complaint.  Ka'u is the southernmost district on the island of Hawaii.

[2]  Although Defendants raise other arguments for dismissal, the court need not address them.

Complaint is construed, it fails to state a plausible § 1983 claim or for habeas relief. Because the Complaint is deficient as to all Defendants, this dismissal is as to all Defendants and all claims.[3]

## II. BACKGROUND

### A.     Factual Background

The Complaint is vague, conclusory, disorganized, and accompanied by numerous attachments. Although the Complaint is difficult to follow, the court discerns the following allegations.

Plaintiff was a party in a civil lawsuit regarding the purchase of a Ford truck in the Third Circuit Court in the State of Hawaii that was filed on August 19, 2008 and assigned to Judge Florendo. Doc. No. 1, Compl. at 5-8. Judge Florendo allegedly discriminated against Plaintiff on the basis of race, intentionally prevented Plaintiff from receiving a fair trial, and unlawfully held Plaintiff in contempt of court after Plaintiff walked out of Judge Florendo's courtroom. *Id.* at 5-13. In a subsequent trial, Judge Hara allegedly conspired with Judge Florendo to

---

[3] The court sua sponte dismisses other Defendants for the same reasons set forth by the moving Defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted); *Omar v. Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

deprive Plaintiff of his right to a fair trial. *Id.* at 11.

After the lawsuit with Judge Florendo, Plaintiff alleges that he was unlawfully arrested on four different occasions, two of which involved Officers Ibarra and Ivy. *Id.* at 6. Plaintiff further asserts that he suffered emotional distress because he was unlawfully denied access to the local flea market and harassed by the HCPD. *Id.* at 6-8. Plaintiff appears to explain that the harassment was inflicted in part by Officers Ibarra and Ivy when they commandeered "the roadways beyond the scope and intent of the state legislature." *Id.* at 18. Plaintiff asserts that this "commandeering" prevented him from hauling water to his home in the subdivision of the Hawaiian Ocean View Estates. *Id.* at 15-17.

As to Burleson, the Complaint alleges that he: (1) filed a prosecutorial complaint against Plaintiff, alleging that Plaintiff committed "the offense of Criminal Contempt of Court," *id.* at 25; and (2) was aware of the conspiracy against Plaintiff and yet failed to use his prosecutorial power to prevent harm to Plaintiff. *Id.* at 13. As to Talon and Iboshi, the Complaint includes no specific allegations, but an attachment to the Complaint indicates that they filed a prosecutorial complaint alleging that Plaintiff committed "the offense of Theft in the Third Degree." *Id.* at 48.

As to Clerk Nahakuelua, Plaintiff asserts that she (1) purposely failed

to credit his account when he made cash payments for court fees, and (2) lied to him on July 12, 2011 when she "guaranteed that no further court appearance was required." *Id.* at 7-8. Plaintiff further asserts that Bailiff intentionally delayed one of Plaintiff's trials and thus intentionally inflicted "personal and emotional distress" on Plaintiff. *Id.* at 14.

Plaintiff theorizes that all of the allegations described above were part of an organized conspiracy to deprive him of his constitutional rights, and that the conspiracy was orchestrated by Judge Florendo. *Id.* at 8-17. The Complaint requests that the court grant various forms of relief, including injunctive relief and damages.[4] *Id.* at 52-53.

## B. Procedural Background

On November 16, 2011, Plaintiff filed his Complaint in the United States District Court for the Southern District of California. On December 9, 2011, the Southern District of California *sua sponte* found that venue was improper and transferred the case to the District of Hawaii. Doc. No. 10, Order Transferring Case at 3.

---

[4] The Complaint requests: (1) an "injunction to stop further behavior by the Defendants;" (2) an order vacating prior charges, warrants, and temporary restraining orders that were issued by State of Hawaii courts; (3) a "right to pass" to haul water from a source not named to Plaintiff's home in the subdivision of the Hawaiian Ocean View Estates in Hawaii County; and (4) compensatory and punitive damages. Doc. No. 1, Compl. at 52-53.

On December 14, 2011, County Defendants filed their Motion to Dismiss. On February 16, 2012, Court Defendants filed their Motion to Dismiss. Plaintiff did not file an Opposition.

During an April 9, 2012 hearing on the Motions to Dismiss, Plaintiff asserted that he was seeking habeas relief, and the court granted Plaintiff's request for an extension of time to file an Opposition. On April 24, 2012, Plaintiff filed a document titled "Petition for Writ of Habues [sic] Corpus Ad Subjiciendum Under Rule 18 Hawaii F.R.C.P." Given the timing of Plaintiff's April 24 filing and its content (it contains no factual assertions and appears, at least in part, to address arguments raised by Defendants), the court construes it as an Opposition to the Motions to Dismiss. On April 30, 2012, Court Defendants and County Defendants filed Replies.

### III.  STANDARDS OF REVIEW

### A.    Rule 12(b)(1):  Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.

Court Defendants are making a "facial attack" on subject matter jurisdiction because they assert that the allegations in the Complaint, on their face, fail to invoke federal jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

6

2000); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

When the allegations of a complaint are examined to determine whether they are

sufficient on their face to confer subject matter jurisdiction, a court takes all

allegations of material fact as true and construes such facts in the light most

favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of

Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). In such an inquiry, the court limits

its analysis to the complaint's allegations and attached documents. *See Samco

Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005) ("We use the

same standard as the district court in analyzing a facial attack on jurisdiction, and

therefore accept the well-pleaded allegations of the complaint as true and limit our

inquiry to the complaint and the documents attached thereto.").

**B.     Rule 12(b)(6):  Failure to State a Claim**

Rule 12(b)(6) permits a motion to dismiss a claim for "failure to state

a claim upon which relief can be granted[.]"  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also

Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This

tenet -- that the court must accept as true all of the allegations contained in the

complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at

555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations

in a complaint or counterclaim may not simply recite the elements of a cause of

action, but must contain sufficient allegations of underlying facts to give fair notice

and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken

as true must plausibly suggest an entitlement to relief, such that it is not unfair to

require the opposing party to be subjected to the expense of discovery and

continued litigation." *Starr*, 652 F.3d at 1216. "Factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555. Factual allegations that only permit the court to infer "the mere possibility of

misconduct" do not show that the pleader is entitled to relief. *Iqbal*, 556 U.S. at

679.

The court may dismiss a complaint pursuant to Rule 12(b)(6) on its

own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

## C.    This Court Will Construe Plaintiff's Pleadings Liberally

Plaintiff is appearing *pro se*; consequently, this court will liberally construe his pleadings. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam) (holding that the Supreme Court "instructs the federal courts" to liberally construe the inartful pleadings of pro se litigants).

## IV.  DISCUSSION

Although vague, conclusory, and disorganized, the Complaint appears to assert § 1983 claims, and County Defendants and Court Defendants argue that the claims against them should be dismissed for a number of reasons. In opposition, Plaintiff appears to assert that his Complaint should be construed as a

9

Petition Seeking Habeas Corpus.[5]  As explained below, liberally construing

Plaintiff's Complaint either as asserting § 1983 claims or as a Petition for Habeas

Relief, Plaintiff has failed to assert a plausible claim for relief.

## A.    The Complaint, Construed as Asserting § 1983 Claims

Defendants argue that the § 1983 claims asserted against them in the

Complaint must be dismissed for a variety of reasons.  The court addresses these

arguments in turn.

### 1.    *Lack of Subject Matter Jurisdiction*

Court Defendants argue that under the *Rooker-Feldman* doctrine, the

court lacks subject matter jurisdiction over the claims against them because this

action is an "attempt by Plaintiff to have a federal court review the judgments

and/or orders issued by a state court."  Doc. No. 17-1, Court Defs.' Mot. at 7.  As

to Plaintiff's claims that would require such review, the court agrees.

Under the *Rooker-Feldman* doctrine, a federal district court lacks

subject matter jurisdiction over an action seeking federal review of a state court

---

[5]  Based on the title of Plaintiff's April 24 filing alone, it is also possible that Plaintiff
intended it to be either a Petition for Habeas Corpus or an Amended Complaint.  Construing
Plaintiff's April 24 filing as either of these options does not save this action from dismissal.  The
court did not grant Plaintiff leave to either a Petition for Habeas Corpus or an Amended
Complaint and in any event, the April 24 filing is so wholly vague and conclusory that it fails to
state a plausible claim for any relief and would be dismissed for the same reasons articulated
below.

judgment.  *Skinner v. Switzer*, 131 S. Ct. 1289, 1291 (2011).  But the doctrine is narrow -- it applies only in "cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments."  *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005)).  The Supreme Court has applied the doctrine "only twice, *i.e.*, only in the two cases from which the doctrine takes its name:  first, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), then [sixty] years later, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)."  *Id.*  In both cases, "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment."  *Id.*

The *Rooker-Feldman* doctrine does not apply when a losing party in state court comes to federal district court raising a "general" constitutional claim, "*i.e.*[,] one that does not require review of a final state court decision."  *Doe Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986)); *Feldman*, 460 U.S. at 487).  "This distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle, and difficult to make."  *McNair*, 805 F.2d at 891.  "If the [plaintiff's] federal

constitutional claims . . . are 'inextricably intertwined' with the state court's judgment, then [the plaintiff] is essentially asking the district court to review the state court's decision, which the district court may not do." *Napolitano*, 252 F.3d at 1029.

Plaintiff's claims appear, in large part, to challenge the state court decisions against him. Specifically, Plaintiff requests that the court vacate prior charges, warrants, and temporary restraining orders that were issued by a State court, and Plaintiff therefore essentially requests the court to review and reject these decisions. The *Rooker-Feldman* doctrine bars such review. The court therefore DISMISSES Plaintiff's claims to the extent they seek review of any decisions by the Hawaii state courts.

But because Plaintiff's claims are not clear, and in light of his *pro se* status, the court further addresses Court Defendant's Rule 12(b)(6) arguments for dismissal to the extent that any portion of Plaintiff's claims against them are not barred by the *Rooker-Feldman* doctrine.

### 2. *Failure to State a Claim*

County Defendants and Court Defendants argue, among other things, that the Complaint fails to state any plausible claims for relief. Doc. No. 14, County Defs.' Mot. at 8-11; Doc. No. 17-1, Court Defs.' Mot. at 4. Based on the

following, the court agrees.

       a.     *Claims against Judge Florendo and Judge Hara*

      Court Defendants argue that the claims asserted against Judge Florendo and Judge Hara are barred by the doctrine of absolute judicial immunity. Doc. No. 17-1, Court Defs.' Mot. at 8-11. The court agrees.

      "Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) (internal citation omitted). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal quotations and citations omitted). Further, whether judicial immunity applies is not affected "by the motives with which [the] judicial acts are performed," a judge's intent, or whether or not a judge's decision is the result of a conspiracy. *Ashelman*, 793 F.2d at 1078. "The rationale for granting judges immunity from liability for even intentional and malicious conduct while acting in their judicial capacity is that judges should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Meek v. County of Riverside*,

13

183 F.3d 962, 965 (9th Cir. 1999) (citing *Stump*, 435 U.S. at 363-64).

When determining whether judicial immunity applies, the Ninth

Circuit considers whether:

> (1) the act is a normal judicial function, (2) the events occurred in the judge's chambers, (3) the controversy centered around a case then pending before the judge, and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

*In re Complaint of Judicial Misconduct*, 366 F.3d 963, 965 (9th Cir. 2004).

In the instant case, Plaintiff appears to allege that Judges Florendo and

Hara, while presiding over cases to which he was a party, conspired to deprive him

of a fair trial and discriminated against him on the basis of race. Plaintiff's claims

against the Judges necessarily fail; his allegations center on events directly related

to a judicial function. The court therefore DISMISSES the Complaint as to all

claims against Judges Florendo and Hara. The dismissal is without leave to amend,

as such leave would be futile. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.

1995) (holding that leave to amend should be granted "[u]nless it is absolutely

clear that no amendment [could] cure the [complaint's] defect[s]").

      *b.    Claims against Clerk Nahakuelua and Bailiff*

Court Defendants argue that the claims asserted against Clerk

Nahakuelua and Bailiff are barred by the doctrine of quasi-judicial immunity. Doc.

No. 17-1, Court Defs.' Mot. at 8-11.  The court agrees.

When performing "duties that are an integral part of the judicial process," court clerks are entitled to absolute quasi-judicial immunity.  *Coulter v. Roddy*, 2011 WL 6364727, at *1 (9th Cir. 2011) (citing *Mullis v. U.S. Bankr. Court for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) (holding that "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process")).  Likewise, court bailiffs are entitled to absolute quasi-judicial immunity from § 1983 claims stemming from the execution of valid court orders.  *Coverdell v. Dep't of Soc. & Health Serv.*, 834 F.2d 758, 764-65 (9th Cir. 1987); *Haldane v. Chagnon*, 345 F.2d 601, 604 (9th Cir. 1965) ("A court's bailiff is required by law to preserve order in the courtroom, to protect the court, and to comply with directions given him by the judge during the course of judicial proceedings.").

Plaintiff's claims against Clerk Nahakuelua and Bailiff are barred as a matter of law.  Clerk Nahakuelua's alleged failure to credit Plaintiff's account when he paid for court fees and subsequent dishonesty regarding Plaintiff's remaining obligations to the court were taken during the course of performing tasks that are integral to the judicial process.  *Coulter*, 2011 WL 6364727 at *1.  Bailiff's actions that allegedly unreasonably delayed Plaintiff's court hearings were

15

taken while Bailiff was working in the court and thus executing court orders. *Coverdell*, 834 F.2d at 764-65. The court therefore DISMISSES the Complaint as to all claims against Clerk Nahakuelua and Bailiff without leave to amend because such leave would be futile.

### c. Claims against Burleson, Talon, and Iboshi

County Defendants argue that the claims asserted against Burleson are barred by the doctrine of absolute prosecutorial immunity. The court agrees, and the reasoning applies equally to Talon and Iboshi.

A state prosecutor is immune from liability under § 1983 for prosecutorial acts taken "within the scope of his duties of initiating and pursuing a criminal prosecution." *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). "The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir. 1987). Thus, prosecutorial immunity extends even to official acts that involve conspiracy, malice, or bad faith. *Ashelman*, 793 F.2d at 1078. State prosecutors are given this absolute immunity for public policy reasons; prosecutors often make "many decisions that could engender colorable claims of constitutional deprivation," and the public would suffer if prosecutorial decisions were influenced by a prosecutor's personal fear of retaliatory harassment

and litigation. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009) (citing *Imbler*, 424 U.S. at 425-26).

In determining whether prosecutorial immunity applies, courts "examine 'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina*, 522 U.S. at 127 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). Absolute immunity applies when a prosecutor functions "as an advocate in the judicial process." *Id.* at 125. For example, a prosecutor is entitled to absolute immunity for the decision of whether or not to prosecute. *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997). And immunity extends to the prosecutor's decision not to investigate. *See Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003) (holding that "[a] prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges").

Absolute immunity also applies when a prosecutor undertakes administrative or investigatory functions in preparation "for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, . . . [such as preparation of evidence] for its presentation at trial or before a grand jury." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity does not apply when a prosecutor performs functions that are

normally performed by non-prosecutors, such as providing "legal advice to the police during their pretrial investigation, . . . [holding] a press conference, . . . [fabricating] evidence concerning an unsolved crime[,] . . .[or performing] investigative functions normally performed by a detective or police officer." *Kalina*, 522 U.S. at 126. Moreover, when a prosecutor acts "as both advocate and witness in the same proceeding," she is immune from liability under § 1983 for her actions taken as an advocate, but not for her actions taken as a witness. *Id.* at 130-31.

The court concludes that Burleson, Talon, and Iboshi have absolute immunity against the claims asserted by Plaintiff. The Complaint alleges that Burleson filed a criminal complaint against Plaintiff, Doc. No. 1, Compl. at 25, and failed to use his prosecutorial power to stop a conspiracy against Plaintiff. *Id.* at 13. As to Talon and Iboshi, an attachment to the Complaint indicates that they filed a criminal complaint against Plaintiff. Compl. at 48. In other words, the Complaint contains no allegations that the prosecutors functioned as anything other than advocates for the State, or carried out any conduct that is normally carried out by non-prosecutors. *Kalina*, 522 U.S. at 125-26. Thus, the court DISMISSES the Complaint as to all claims against the three prosecutors.

Because the Complaint is vague and conclusory, the court cannot

determine if Plaintiff could, if granted leave to amend, state plausible claims for relief against the prosecutors.  If Plaintiff believes he can clearly allege that the prosecutors injured his rights while performing functions not normally performed by prosecutors as advocates for the State, he may file an Amended Complaint.

### d.      Claims against the HCPD

County Defendants argue that Plaintiff's claims against the HCPD must be dismissed because the HCPD is not an independent legal entity subject to suit.

The court agrees that the HCPD is not a proper defendant -- a county's departments may not be subject to suit unless the county's charter states otherwise. *See Dusenberry v. Cnty. of Kauai*, 2007 WL 3022243, at *3 (D. Haw. Oct. 12, 2007) (holding that the defendants could sue the County of Kauai, but not the Kauai Police Department because it is an entity of the County of Kauai and nothing in the County's charter suggested the police department was subject to suit).  And nothing in the Charter for the County of Hawaii indicates that the HCPD may be subject to suit.[6]

---

[6] The court takes judicial notice of Article VII, § 7-2.1 of the 2010 Charter of the County of Hawaii, which states that the HCPD is an entity of the County of Hawaii.  *See* County Charter, County of Hawaii 2010.  Available at: http://records.co.hawaii.hi.us/Weblink8/DocView.aspx?dbid=1&id=24890 (last visited May 11, 2012).

Liberally construing Plaintiff's pleadings, however, the court recognizes that Plaintiff may be asserting claims against Officers Ibarra and Ivy and the County of Hawaii ("County"), even though they are not listed in the Complaint as Defendants. The Complaint asserts that Officers Ibarra and Ivy unlawfully arrested Plaintiff, Doc. No. 1, Compl. at 6, and harassed Plaintiff by preventing him from hauling water to his home. *Id.* at 15-17. The County is never mentioned in the Complaint or its attachments, but the allegations pertaining to the HCPD suffice; a police department is part of its respective county, *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1127 (9th Cir. 2002), and counties can be subject to suit on a limited basis. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978).

The Complaint, however, fails to state a plausible claim for relief against Officers Ibarra and Ivy or the County; even reading the Complaint liberally, its factual allegations are too vague and conclusory to raise the right to relief beyond the speculative level. *Twombly*, 550 U.S. at 555.

Specifically, for the police officers to be held liable under § 1983, Plaintiff must plead specific facts to support specific constitutional violations in a manner that raises the right to relief beyond the speculative level. *Twombly*, 550 U.S. at 555. No such facts are pled in the Complaint.

For the County to be liable under § 1983, Plaintiff must establish that an HCPD policy, custom, or practice was the "moving force" behind the alleged violation of his constitutional rights. *Monell*, 436 U.S. at 694. The failure to properly train police officers may be a policy for which a county is liable under § 1983 if "the need for more or different training [was] so obvious" that a violation of constitutional rights was likely to result from the lack of training and thus the county's policy was "deliberately indifferent to the need [for training]." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Similarly, the failure to properly supervise police officers may be a policy for which a county is liable under § 1983 if the "supervision is sufficiently inadequate as to constitute 'deliberate indifference' to the rights of persons with whom the police come into contact." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (quoting *City of Canton*, 489 U.S. at 389). Plaintiff, however, must show more than "mere negligence" in police training or supervision. *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). In other words, for the HCPD to be liable under § 1983, Plaintiff must establish: (1) that he was deprived of a constitutional right that he possesses; (2) that the HCPD had a policy, custom, or practice; (3) that this policy, custom, or practice amounts to deliberate indifference to his constitutional right; and (4) that the policy, custom, or practice was the moving

force behind the alleged constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). No such facts are pled in the Complaint.

The court therefore DISMISSES the claims against the County and Officers Ibarra and Ivy with LEAVE TO AMEND.

**B.     The Complaint, Construed as a Petition for Habeas Corpus**

To the extent that Plaintiff intended the Complaint to be a Petition for Habeas Corpus, it must be dismissed -- it is too conclusory for the court to determine any basis on which Plaintiff might be entitled to habeas relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"); *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (providing that summary dismissal of a habeas claim is appropriate "where the allegations in the petition are vague and conclusory"). Specifically, "in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The Complaint, to be sufficient, must explain what constitutional right, statute, or treaty Plaintiff asserts was violated. It fails to do so.

Further, habeas relief is available only to persons "in custody" at the

time the petition is filed.  28 U.S.C. §§ 2241(c), 2254(a).  This requirement is

jurisdictional.  *See Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam);

*Carafas v. LaVallee,* 391 U.S. 234, 238 (1968).  It is not necessary, however, that a

prisoner be physically confined to meet the custody requirement.  *Maleng*, 490

U.S. at 491.  The "in custody" requirement is satisfied where the sentence imposed

"significantly restrain[s] petitioner's liberty to do those things which in this

country free men are entitled to do."  *Jones v. Cunningham*, 371 U.S. 236, 243

(1963).  For example, a petitioner on parole or on probation at the time of filing is

considered to be in custody.  *Id*. at 241-43; *Chaker v. Crogan*, 428 F.3d 1215, 1219

(9th Cir. 2005).

        The Complaint includes no allegations explaining the precise

conviction Plaintiff is contesting and whether Plaintiff is in custody, will be placed

into custody, or is on parole and/or probation.  Without such information, the court

cannot determine what confinement Plaintiff is contesting and the basis on which

he is contesting it.[7]

        Thus, to the extent that Plaintiff intended his Complaint to be a

---

[7]  In their Replies, both Court Defendants and County Defendants argue that Plaintiff's
Petition for Habeas Corpus must be dismissed for failure to exhaust state remedies.  Failure to
exhaust, however, is an affirmative defense that Defendants must establish; it need not be pled in
a Petition.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  To the extent that Plaintiff chooses to
file an Amended Petition for Habeas Corpus, Defendants are not precluded from establishing this
defense.

Habeas Petition, it is DISMISSED without prejudice.  If Plaintiff wishes to seek habeas relief, he should file a Petition for Habeas Corpus, clearly labeled as such. A Petition for Habeas Corpus must =be a separate filing distinct from this action, requiring a $5.00 filing fee.  In other words, Plaintiff may choose to file an Amended Complaint, as outlined below, in this action, but any Petition for Habeas Corpus must be filed as a separate action.

## V.  LEAVE TO AMEND

When dismissing the complaints of *pro se* litigants, the court abides by the principle that *pro se* litigants are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action," "[u]nless it is absolutely clear that no amendment can cure the [complaint's] defect[s]."  *Lucas*, 66 F.3d at 248; *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Liberally construing the Complaint, it is clear that no amendment can cure its defects as they pertain to Judge Hara, Judge Florendo, Clerk Nahakuelua, Bailiff, and the HCPD.  The court thus DENIES leave to amend as to these Defendants because such leave would be futile.  The court, however, GRANTS LEAVE TO AMEND to assert § 1983 claims as to Burleson, Talon, Iboshi, the County of Hawaii, and Officers Ibarra and Ivy because Plaintiff may be able to

cure the Complaint's defects via an Amended Complaint as explained in this Order.

Plaintiff may file an Amended Complaint that (1) complies with Rule 8's requirement of "simple, concise, and direct" allegations, and (2) contains a basis for federal subject matter jurisdiction. If Plaintiff chooses to file an Amended Complaint:

1.   He must clearly state how each Defendant has injured him. In other words, Plaintiff should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief; and

2.   Plaintiff must clearly state the relief sought and how there is a basis for a claim in federal court. In other words, Plaintiff must explain the basis of this court's jurisdiction.

Plaintiff is further notified that an Amended Complaint supersedes all previously-filed complaints. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the court will treat the Complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint is waived if it is not raised in an Amended Complaint. *King v. Atiyeh*,

814 F.2d 565, 567 (9th Cir. 1987). Thus, if Plaintiff chooses to file an Amended Complaint, he must include both a federal claim as well as any state law claims that he asserts against Defendants.

As described above, Plaintiff may also choose to file a Petition for Habeas Corpus. A Petition for Habeas Corpus will be a separate filing distinct from this action.

## VI. CONCLUSION

For the reasons stated above, the court GRANTS the Motions to Dismiss the claims against Judge Hara, Judge Florendo, Clerk Nahakuelua, Bailiff, and the HCPD without leave to amend. The court, however, GRANTS LEAVE TO AMEND to file an Amended Complaint asserting § 1983 claims against Burleson, Talon, Iboshi, the County, and Officers Ibarra and Ivy. Failure to file an Amended Complaint by June 4, 2012 will result in automatic dismissal of this action.

Plaintiff may also file a separate Petition for Habeas Corpus, along with the $5.00 filing fee, which must be filed as a separate action. The court

///

///

///

directs the Clerk's Office to provide the appropriate forms and instructions for

seeking habeas relief.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 15, 2012.



        /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kriege v. Hara et al.*, Civ. No. 11-00757 JMS/BMK, Order (1) Granting Defendants Jeffery N. Burleson and Hawaii County Police Department's Motion to Dismiss; (2) Granting Defendants Judge Joseph P. Florendo, Judge Glen S. Hara, and Elaine Nahakuelua's Motion to Dismiss; (3) Sua Sponte Dismissing Claims as to Other Defendants; and (4) Granting Leave to Amend